UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

ANDREW BRYANT,                         )
                                       )
            Plaintiff,                 )
                                       )
      vs.                              )   No. 2:16-cv-00181-WTL-MJD
                                       )
UNITED STATES OF AMERICA,              )
                                       )
            Defendant.                 )

**Entry Discussing Motion for Summary Judgment**

Plaintiff Andrew Bryant is a former inmate at the Federal Correctional Complex in Terre Haute, Indiana (FCC Terre Haute). After screening of the amended complaint, Bryant's claims, brought under the Federal Tort Claims Act (FTCA), are that because of the negligence of staff at the FCC Terre Haute he was injured in an attack by another inmate and that, while he was held in the Secured Housing Unit (SHU) at that facility, he was sickened by exposure to mold. The defendant has moved for summary judgment and Bryant has responded. For the following reasons, the motion for summary judgment, Dkt. No. 40, is **granted**.

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view

the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. Undisputed Facts

### A. The Assault on Bryant

On June 17, 2015, Bryant, was eating in the dining hall at the FCC Terre Haute when another inmate hit him on the right side of his head. According to Bryant, the other inmate sneaked up behind Bryant and hit him from "the blind side." Bryant is not sure whether the other inmate hit him with his fist or an object.

Before this incident, Bryant knew the other inmate and they had an "all right relationship." The other inmate had never threatened Bryant, and Bryant was not aware that the other inmate had any problems with him. Bryant had not requested to be separated from the other inmate because he "didn't feel threatened." Bryant is not sure why the other inmate hit him and, to this day, has no idea why the incident occurred.

### B. Prior Incident Involving Bryant's Assailant

About one month before this incident, his attacker was involved in a "knife fight" with another inmate in the bathroom of the dining hall. Bryant did not witness the incident and does not remember the name of the other inmate involved in the incident, but says that he saw the two inmates come out of the bathroom and one was bleeding. Bryant believes based on this prior

incident that his assailant should have been transferred to another institution and should not have been at FCC Terre Haute in June 2015. In support of this allegation, Bryant has produced a Discipline Hearing Officer Report, which describes an incident between Bryant's assailant (Inmate #1) and another inmate (Inmate #2). According to the report, on April 29, 2015, Inmate #2 followed Inmate #1 into the dining hall restroom and when Inmate #1 exited the restroom, he had lacerations above his left eye, his nose, and his forearm. Inmate #1 stated to the nurse that he "was sitting on the toilet and he [Inmate #2] came in and started attacking me." Based on the foregoing, an Incident Report was written against Inmate #2.

According to BOP records, prior to June 17, 2015, Inmate #1 (Bryant's assailant) had never been disciplined while in the Bureau of Prisons. After the June 17, 2015, incident, an Incident Report was written against Inmate #1 charging him with an infraction for hitting Bryant. Inmate #1 was ultimately found guilty of hitting Bryant and was disciplined, including a loss of Good Conduct Time.

### C. BOP Authority over Inmate Placement

The BOP has broad statutory authority to control and manage federal correctional institutions, including housing of prisoners in its custody. *See, e.g.*, 18 U.S.C. §§ 3621, 4001(b)(1), 4042(a)(1) (2). The BOP is also charged with designating the place of a prisoner's imprisonment. 18 U.S.C. § 3621. It may designate any available facility that meets minimum standards of health and habitability established by the BOP. 18 U.S.C. § 3621(b). In determining what designation is appropriate and suitable for any given individual the BOP is to consider, among other things: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; and (3) the history and characteristics of the prisoner. 18 U.S.C. §

3621(b). The BOP may direct the transfer of a prisoner from one penal or correctional facility to another at any time. *See id.*

The BOP has no rule or policy mandating that an inmate be disciplined or placed in a certain custody level facility or location based on his actions. BOP Program Statement 5270.09, which relates to Inmate Discipline, states that a BOP staff member must write an incident report when the staff member "witnesses or reasonably believes that an inmate has committed a prohibited act." The incident report is the first step in charging an inmate with an infraction, but there is no requirement that the BOP conduct an investigation, charge the inmate with an infraction, or discipline or move the inmate to a different facility or a higher custody level unit (like the SHU) based on his actions. The BOP has the discretion to impose sanctions or not.

The BOP also has discretion on whether to change an inmate's custody classification if he is found to have committed a prohibited act. There are no mandatory statutory provisions regarding classification or placement of prisoners. Two statutory provisions give the BOP discretion in this regard. First, 18 U.S.C § 4081 provides that prisoners should be classified: "according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to [Federal penal and correctional] institutions."

### D. Bryant's Toxic Black Mold Claim

During the time the incident was being investigated, Bryant was housed in the FCI Special Housing Unit (SHU) for approximately six weeks. Bryant claims that there was "black mold" in the showers and in his cell. Bryant believes that it was "toxic" black mold because he says he began experiencing breathing problems that he believes are consistent with black mold

exposure. He also says that a BOP staff member, SHU Lieutenant "Blackman" or "Black," told him in August 2015 that the SHU was being "shut down" or closed for remodeling to get rid of mold. No doctor has informed Bryant that his breathing problems were caused by exposure to mold. Bryant's family doctor, Dr. Hill, told Bryant that he had "light breathing," but did not diagnose Bryant or prescribe him any medication. Dr. Hill told Bryant that mold exposure "could" cause light breathing, but did not make any findings that Bryant's light breathing was in fact caused by mold exposure. No other physician has offered an opinion that Bryant's light breathing is caused by mold exposure. According to BOP records from the Safety Department, there are no records indicating that toxic black mold was present in the FCI SHU. BOP records also do not show that any mold remediation or remodeling occurred in August 2015 in the FCI SHU.

## III. Discussion

The United States moves for summary judgment on Bryant's failure to protect claim and his claim that he was exposed to toxic mold.

### A. *Bryant's Failure to Protect Claim*

The United States argues that Bryant's claim based on that assault[1] is barred by the discretionary function exemption of the FTCA and that no employee of the United States was negligent.

---

[1] Bryant contends in his response to the motion for summary judgment that these arguments do not apply to his claims that he was improperly subjected to discipline as a result of the fight and that correctional officers retaliated against him. But Bryant's Second Amended Complaint presenting those claims was rejected in the Entry of April 11, 2017, for failure to state a claim upon which relief can be granted. The complaint was rejected because, among other things, there is no malicious prosecution claim based on disciplinary action and because Bryant had not stated what individuals were alleged to have retaliated against him. Dkt. 32. Further, while he argues that he was treated differently than his assailant, he presents no evidence to support a conclusion that this treatment was the result of retaliation against him.

Through the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees in certain circumstances, subject to various exceptions. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). One exception is the discretionary function exception, which maintains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *See* 28 U.S.C. § 2680(a). The discretionary function exception is an affirmative defense to liability under the FTCA that the government must plead and prove. *Keller v. United States*, 771 F.3d 1021, 1023 (7th Cir. 2014) (citing *Parrott v. United States,* 536 F.3d 629, 634–35 (7th Cir. 2008); *Reynolds v. United States,* 549 F.3d 1108, 1112 (7th Cir. 2008); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir. 1952); *S.R.P. ex rel. Abunabba v. United States,* 676 F.3d 329, 333 n. 2 (3d Cir. 2012) (collecting cases from other circuits)). To support summary judgment under the exception, the government must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception. *Id.*

The discretionary function exception has two elements. *Calderon v. United States*, 123 F.3d 947, 949 (7th Cir. 1997). "First, a discretionary act must be involved. In other words, the act for which liability is sought to be imposed must involve 'an element of judgment or choice.'" *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). In addition, "'even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (quoting *Gaubert*, 499 U.S. at 322). "[T]he exception protects only governmental actions and decisions based on considerations of public policy." *Id.*

The United States argues that the BOP's decision about inmate classification, including the classification of Bryant's assailant, meets both elements of the discretionary function exemption. First, the classification and placement of inmates in the BOP is within the BOP's discretion. Although the BOP, "shall . . . provide for the safekeeping, care, and . . . protection . . . of all persons charged with or convicted of offenses against the United States," 18 U.S.C. § 4042, it has wide discretion in carrying out this duty. *Calderon*, 123 F.3d 947 ("[w]hile it is true that [§ 4042] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates."); *see* 18 U.S.C § 4081 (directing classification of federal prisoners); 18 U.S.C. § 3621(b) (providing that the BOP may determine the appropriate placement of all prisoners). In addition, the United States argues that the placement of prisoners is based on public policy considerations. "It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy." *Calderon*, 123 F.3d 947, 951 (7th Cir. 1997); (citing *Cf. Bell v. Wolfish,* 441 U.S. 520, 547–48 (1979) (holding that since problems that arise on the day to day basis of correctional facilities involve many complex issues, prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security)).

The United States has shown that the BOP has broad discretion regarding inmate placement. Inmate placement therefore involves an element of judgment or choice such that the first prong of the discretionary function has been satisfied. *See Calderon*, 123 F.3d at 949 (because the plaintiff presented no evidence that BOP personnel witnessed any violation of

prison regulations or made any formal finding that the plaintiff's assailant committed a prohibited act, the decision not to separate him "is properly classified as a discretionary act").

The United States has also shown that the decision to maintain Bryant's assailant at the FCC Terre Haute was based on policy considerations. *See id*. Bryant has not presented any facts which would support a finding that the BOP's action in maintaining his assailant in general population at the USP Terre Haute was based on grounds other than considerations of public policy. There is no indication here that officials were or should have been aware that the assailant would pose a threat and failed to do anything about it. *Cf. Keller*, 771 F.3d at 1024 ("[I]f prison officials behaved negligently without making a discretionary judgment of the type shielded by the exception, the discretionary function exception would not apply to their conduct."). While Bryant's assailant was involved in a previous altercation, the undisputed evidence is that he was the victim, not the initiator, of the previous assault. Thus, while the discretionary function does not apply when officials behaved negligently without actually making a judgment, the United States has shown that no official acted negligently in determining the placement of Bryant and his assailant. The United States has therefore shown that it is entitled to summary judgment on Bryant's failure to protect claim.

B. *Toxic Mold*

The United States also moves for summary judgment on Bryant's claim that he was exposed to toxic mold while he was held in the SHU.

Because this claim is brought under the FTCA, to succeed on it, Bryant must establish the elements of a tort claim for toxic exposure under Indiana law. *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). The elements of a toxic tort claim under Indiana law include (1) actual exposure to a toxic chemical; (2) actual personal injury; (3) general causation or "whether a particular agent

can cause a particular illness," and (4) proximate causation or "whether the agent in fact caused the particular plaintiff's illness." *Aurand v. Norfolk S. Ry. Co.*, 802 F. Supp. 2d 950, 953 (N.D. Ind. 2011). A toxic tort plaintiff must provide evidence of both general and specific causation. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 831 (7th Cir. 2015). General causation examines whether the substance—in this case, mold—"had the capacity to cause the harm alleged[.]" *7–Eleven, Inc. v. Bowens,* 857 N.E.2d 382, 389 (Ind. Ct. App. 2006). Specific causation examines whether the substance did, in fact, cause the harm alleged. *Id*. The plaintiff must present expert testimony to establish causation when there is no obvious source of the injury. *Myers v. Illinois Central Railroad Co.*, 629 F.3d 639, 643 (7th Cir. 2010); *Bowens*, 857 N.E.2d at 389.

The United States argues that it is entitled to summary judgment because Bryant has not presented evidence that he was exposed to mold or that any exposure to mold caused his breathing problems. Bryant responds that his family doctor diagnosed him with "light breathing" and argues that it is reasonable to conclude that this condition could have been caused by exposure to black mold. But Bryant has not presented any evidence that he actually was exposed to toxic mold. Further, he has not presented any expert testimony, or any evidence beyond his own speculation, to show that his condition is the result of mold exposure. In short, Bryant has not presented any evidence to support the elements of his toxic mold claim. The United States is therefore entitled to summary judgment on this claim.

C. *Discovery Issues*

Bryant also argues in response to the motion for summary judgment that the United States has failed to provide certain disclosures and other discovery to him. The United States replies that it did respond to Bryant's discovery requests and points out that some of the exhibits

attached to Bryant's response to the motion for summary judgment were part of the United States' discovery responses. Further, and more importantly, until he filed his response to the motion for summary judgment, Bryant never notified the Court of any issues regarding his discovery requests. He did not file a motion to compel or request an extension of time to complete discovery based on an assertion that the discovery responses were incomplete. The deadline for completing discovery was June 16, 2017. Pursuant to Rule 16(b)(4) of the *Federal Rules of Civil Procedure*, "A schedule may be modified only for good cause . . ." Bryant has presented no sound reason that that the deadline for completing discovery should be modified. Accordingly, any argument presented at this late stage that discovery was not provided is rejected.

## IV. Conclusion

For the foregoing reasons, the motion for summary judgment filed by the United States, Dkt. No. 40, is **granted**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 12/7/17

Distribution:

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

ANDREW BRYANT
1108 E 45th St..
Apt 1A
Chicago, IL 60653

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov